IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAMON SMITH,<br><br>               Petitioner,<br><br>     v.<br><br>CLAIRE DEMATTEIS, Commissioner,<br>Delaware Department of Corrections,<br>KOLAWOLE AKINBAYO, Warden, and<br>ATTORNEY GENERAL OF THE STATE<br>OF DELAWARE,<br><br>               Respondents. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 17-1423 (MN)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| DAVID WILLIAMS,<br><br>               Petitioner,<br><br>     v.<br><br>CLAIRE DEMATTEIS, Commissioner,<br>Delaware Department of Corrections,<br>MARVIN MAILEY, Bureau Chief, and<br>ATTORNEY GENERAL OF THE STATE<br>OF DELAWARE,<br><br>               Respondents.[1] | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 17-1491 (MN)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

[1]     Bureau Chief Marvin Mailey replaced former Bureau Chief James Elder, an original party to the case. *See* Fed. R. Civ. P. 25(d).

|  |  |  |
|---|---|---|
| JAMONN GRIER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1511 (MN) |
| | ) | |
| CLAIRE DEMATTEIS, Commissioner, | ) | |
| Delaware Department of Corrections, | ) | |
| ROBERT MAY, Warden, and ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| DELAWARE, | ) | |
| | ) | |
| Respondents.[2] | ) | |

## MEMORANDUM OPINION

J. Brendan O'Neill and Nicole Marie Walker, Office of Defense Services for the State of Delaware, Wilmington, Delaware.

      Counsel for Petitioners Damon Smith, David Williams, and Jamonn Grier.


Brian L. Arban and Kathryn Joy Garrison, Deputy Attorney Generals, Delaware Department of Justice, Wilmington, Delaware.

      Counsel for Respondents.


February 16, 2021
Wilmington, Delaware

---

[2]     Warden Robert May replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court are three separate but nearly-identical § 2254 Petitions. One Petition is filed by each of the following: Damon Smith (C.A. No. 17-1423-MN), David Williams (C.A. No. 17-1491-MN), and Jamonn Grier (C.A. No. 17-1511-MN).

All three Petitioners were convicted of drug-related offenses between 2008 and 2011. Petitioner Williams' conviction was the result of a stipulated bench trial, and the convictions of Petitioners Smith and Grier were the result of guilty pleas. Beginning in the Spring of 2014, Delaware's Office of Defense Services ("ODS") filed Rule 61 motions[3] in the Superior Court on behalf of the instant Petitioners asserting identical claims for relief arising from issues relating to an evidence scandal in the Office of the Chief Medical Examiner ("OCME"), namely, that the OCME misconduct constituted impeachment material under *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioners Smith and Grier also argued that their guilty pleas were rendered involuntary under *Brady v. United States*, 373 U.S. 742 (1970), because the State failed to disclose evidence of OCME misconduct prior to the entry of their guilty pleas. The ODS, which had filed Rule 61 motions on behalf of 700 or more defendants convicted of drug-related charges, chose the Rule 61 motions of eight other defendants for the Superior Court to decide ("Rule 61/OCME Test Case"). *See State v. Miller*, 2017 WL 1969780, at *1 (Del. Super. Ct. May 11, 2017). Because the Rule 61 motions filed by the ODS in those other cases were identical to those in the Rule 61/OCME Test Case, the parties agreed that the Superior Court's decision in the Rule 61/OCME Test Case would resolve many of the remaining outstanding Rule 61 motions pending before the Superior Court, including the Rule 61 motions for the three Petitioners here. *Id.* The Superior Court denied the Rule 61 motions in the Rule 61/OCME Test Case on May 11, 2017, *id.*, and then denied the

---

[3]     A Rule 61 motion is a motion for post-conviction relief filed pursuant to Delaware Superior Court Criminal Rule 61.

Rule 61 motions in the other cases – including the Rule 61 proceedings for the instant Petitioners – after that disposition.  The instant three Petitioners did not appeal the denial of their Rule 61 motions.

Instead, they filed the § 2254 petitions presently pending before the Court.  Each petition raises the same argument that the OCME misconduct constituted powerful impeachment material under *Brady v. Maryland*.  (D.I. 2 in *Smith*, C.A. No. 17-1423-MN; D.I. 2 in *Williams*, C.A. No. 17-1491-MN; D.I. 3 in *Grier*, C.A. No. 17-1511-MN).  The two Petitioners who pled guilty (Smith and Grier) also contend that their guilty pleas were involuntary under *Brady v. United States*, because the State failed to disclose evidence of the OCME misconduct prior to the Petitioner entering a guilty plea.  Soon after filing the instant petitions, the parties in each of the three cases filed a joint motion to stay briefing until Chief Judge Stark resolved *Boyer v. Akinbayo*, C.A. No. 17-834-LPS, a case with the same procedural issue (*i.e.*, whether the petitioner's failure to appeal the Superior Court's denial of his Rule 61 motion precluded habeas relief due to his purposeful failure to exhaust state remedies).  On November 6, 2018, Chief Judge Stark dismissed Boyer's habeas petition as procedurally barred and declined to issue a certificate of appealability.  *See Boyer v. Akinbayo*, 2018 WL 5801545 (D. Del. Nov. 6, 2018).  Boyer filed a notice of appeal with the Third Circuit Court of Appeals.  On April 11, 2019, the Third Circuit denied Boyer's request for a certificate of appealability because "[j]urists of reason could not debate that the District Court properly denied Appellant's 28 U.S.C. § 2254 habeas petition." (*See* D.I. 23 in *Boyer*, C.A. No. 17-834-LPS).

Following the decision in *Boyer*, the Court lifted the stay in each of the instant three proceedings.  Thereafter, the State filed an answer in opposition to each petition.  In all three answers, the State contends that the Court is procedurally barred from reviewing the claims for

relief because the Petitioners did not exhaust state remedies for those claims.  The State also contends that all three petitions are time-barred.  (D.I. 13 in *Smith*, C.A. No. 17-1423-MN; D.I. 11 in *Williams*, C.A. No. 17-1491-MN; D.I. 13 in *Grier*, C.A. No. 17-1511-MN).  None of the three Petitioners filed replies.

The Court has considered each petition, answer, and all other materials submitted in each of the instant three cases.  Because the briefing in the three cases is nearly identical in all material with respect to the substantive and procedural legal issues, and particularly with respect to the exhaustion/procedural bar issue, the Court finds that judicial economy is served by review and disposition of the cases together.  Therefore, the Court *sua sponte* consolidates these cases for decision by a single Memorandum Opinion and Order to be filed in each case.[4]  *See* Fed. R. Civ. P. 42(a); *In re TMI Litigation*, 193 F.3d 613, 724 (3d Cir. 1999) ("The purpose of consolidation is to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues."); *Ellerman Lines, Ltd. v. Atlantic & Gull Stevedores, Inc.,* 339 F.2d 673, 675 (3d Cir. 1964) (noting that a court may consolidate cases *sua sponte* or on motion of a party).  For the reasons that follow, the Court will dismiss all three petitions and deny the relief requested.

## I.    BACKGROUND

### A.    OCME Criminal Investigation

The relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the
> Department of Justice ("DOJ") began an investigation into criminal

---

[4]    Because the exhaustion/procedural bar issue is identical and dispositive in each of the cases, the Court will not address the statute of limitations argument raised by the State in the petitions.  For simplicity, the Court's citations in the remainder of this Opinion are to the docket for Petitioner *Smith*, C.A. No. 17-1423-MN, unless otherwise noted.

misconduct occurring in the Controlled Substances Unit of the OCME.

The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.

There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

### B. Procedural Background for Each Petitioner

#### 1. Damon Smith (C.A. No. 17-1423-MN)

On November 9, 2010, Smith pled guilty to maintaining a dwelling. (D.I. 2 at 4; D.I. 2-1 at 2). That same day, the Superior Court sentenced Smith to three years at Level V incarceration, suspended for one year of Level IV Crest supervision which, in turn, was suspended for one year of Level III probation with Crest aftercare upon the successful completion of the Crest program. (D.I. 2 at 4; D.I. 2-2). Smith did not file a direct appeal.

On November 27, 2012, Smith filed a *pro se* motion for modification of sentence. (D.I. 2-1 at 2; D.I. 13 at 2). The Superior Court granted that motion on December 18, 2012, and modified Smith's sentence by: (1) changing his Level IV supervision from the Crest program to work release; and (2) ordering Smith to be held at the Level IV violation of probation Center instead of Level V until space became available in the work release program. (D.I. 14-5). Smith filed two

more *pro se* motions to modify or reduce his sentence, on March 22 and April 15, 2013, which the Superior Court denied on April 5, 2013 and April 23, 2013.  (D.I. 2-1 at 3; D.I. 13 at 2).  On September 23, 2013, Smith was arrested and held in default of bail on an administrative warrant stemming from a violation of probation.  (D.I. 14-1 at 2).

On May 6, 2014, the ODS filed in the Superior Court a Rule 61 motion on Smith's behalf based on the misconduct at the OCME.  (D.I. 2-1 at 4).  On February 13, 2015, the Superior Court found Smith in violation of the terms of his supervision after a hearing and sentenced him accordingly.  (D.I. 14-1 at 3).  Smith filed a motion for correction of sentence, which the Superior Court denied on August 12, 2015.  (D.I. 14-1 at 3-4).  The Superior Court denied Smith's Rule 61 motion on June 27, 2017.  (D.I. 2-4).

On October 11, 2017, the ODS filed in this Court a § 2254 petition on Smith's behalf, asserting that the OCME misconduct constituted impeachment material under *Brady v. Maryland* and he might not have pled guilty if he had known that he might be able to cast doubt on the chemical composition of the drugs.  (D.I. 2 at 18-19).  Smith contends that his lack of knowledge of the OCME evidence scandal was material to his decision to plead guilty and, therefore, his guilty plea was involuntary pursuant to *Brady v. United States*.  (*Id*. at 11-19).  The State filed an answer asserting that Smith's petition should be dismissed as procedurally barred because Smith, like Boyer, did not present his claim to the Delaware Supreme Court on direct or post-conviction appeal.  (D.I. 13 at 12-20).  The State alternatively asserts that the petition should be dismissed as time-barred.  (*Id*. at 5-12).

**2.    David Williams (C.A. No. 17-1491-MN)**

On October 23, 2008, following a stipulated trial wherein Williams waived a jury trial and did not contest the State's evidence established at the suppression hearing, the Superior Court

found Williams guilty of possession (heroin) within 300 feet of a park.  (D.I. 2 at 8; D.I. 11 at 2; D.I. 12-1 at 3).  The Superior Court sentenced Williams on March 6, 2009 as a habitual offender to ten years at Level V incarceration, with credit for 56 days previously served.  (D.I. 2-2; D.I. 12-1 at 4; D.I. 12-3 at 79).  Williams appealed, and the Delaware Supreme Court affirmed his convictions and sentence on September 16, 2009.  *See Williams v. State*, 981 A.2d 1174 (Table), 2009 WL 2959644 (Del. Sept. 16, 2009).

On December 11, 2009, acting *pro se*, Williams filed his first Rule motion.  (D.I. 12-1 at 5; D.I. 12-15).  The Superior Court denied the Rule 61 motion on May 28, 2010.  (D.I. 12-1 at 7; D.I. 12-20)  Williams appealed, and the Delaware Supreme Court affirmed that judgment on January 26, 2011.  *See Williams v. State*, 12 A.3d 1155 (Table), 2011 WL 252948 (Del. Jan. 26, 2011).  In March 2011, Williams filed a federal habeas petition in this Court, which was denied on March 12, 2014.  (D.I. 11-1 at 1); *see also Williams v. Pierce*, 2014 WL 1022644, at *1 (D. Del. Mar. 13, 2014).

On August 7, 2014, Williams filed a letter with the Superior Court, requesting that his Level V sentence run concurrently with another Level V sentence.  (D.I. 12-1 at 8).  The Superior Court denied that request on December 2, 2014.  (D.I. 12-1 at 8).  Williams filed a motion for review of sentence on February 24, 2014, which the Superior Court denied on May 28, 2015. (D.I. 12-1 at 8).

On May 26, 2015, the ODS filed in the Superior Court a Rule 61 motion for post-conviction relief on Williams' behalf based on the OCME misconduct.  (D.I. 12-1; D.I. 12-14).  The Superior Court denied Williams' Rule 61 motion on August 31, 2017.  (D.I. 2-4).  Williams did not appeal that decision.

On October 24, 2017, the ODS filed in this Court a § 2254 petition on Williams' behalf, asserting the same claim that the OCME misconduct constituted impeachment material under *Brady v. Maryland* as already described above with respect to Smith's petition.  (D.I. 2 at 10-14).  The State filed an answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Smith's petition.  (D.I. 11 at 13-22).  The State alternatively asserts that Williams' petition should be dismissed as time-barred and as moot.  (D.I. 11 at 8-13, 22-25).

### 3.   Jamonn Grier (C.A. No. 17-1511-MN)

On August 31, 2011, Grier pled guilty to distribution of a narcotic (cocaine) within 1000 feet of a school.  (D.I. 3 at 8; D.I. 3-1 at 3).  On September 20, 2011, the Superior Court sentenced Grier to five years at Level V incarceration, suspended for two years of Level III probation.  (D.I. 3-2 at 2).  Grier did not appeal his conviction or sentence.  On May 16, 2012, the Superior Court found that Grier had violated the terms of his probation and sentenced him to five years at Level V, followed by one year of Level II probation.  (D.I. 14-1 at 2-3; D.I. 14-4).

On May 13, 2014, the ODS filed in the Superior Court a Rule 61 motion on Grier's behalf based on the misconduct at the OCME.  (D.I. 3-1 at 4; D.I. 14-5).  The Superior Court denied the Rule 61 motion on August 25, 2017.  (D.I. 3-4).  Grier did not appeal that decision.

On October 25, 2017, the ODS filed in this Court a § 2254 petition on Grier's behalf, asserting the same OCME misconduct/involuntary guilty plea claim as already described above with respect to Smith's petition.  (D.I. 3).  The State filed an answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Smith's petition.  (D.I. 13 at 8-16).  The State alternatively asserts that the petition should be dismissed as time-barred.  (*Id.* at 5-8).

## II.    GOVERNING LEGAL PRINCIPLES

### A.    Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.    Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by fairly presenting all claims to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner may be excused from exhausting state remedies when there is either an absence of an available State corrective process or the existence of circumstances, such as futility or inordinate delay, that render such processes ineffective. *See* 28 U.S.C. § 2254(b)(1)(B); *Duckworth v. Serrano*, 454 U.S. 1 (1981). Situations falling within the "ineffective corrective process" exception to the exhaustion requirement include those instances when "(1) the state corrective process is so deficient as to render any effort to obtain relief futile []; (2) acts of state officials have, in effect, made state remedies unavailable to the petitioner []; or (3) 'inordinate delay' in state proceedings has rendered state remedies ineffective." *Kozak v. Pennsylvania*, 2012 WL 4895519, at *4 (M.D. Pa. Oct 15, 2012). When a failure to exhaust is excused due to an ineffective corrective process, the court may review a claim on its merits without engaging in the procedural default analysis. *See, e.g., Lee v. Stickman*, 357 F.3d 338, 344 (3d Cir. 2004); *Story v. Kindt*, 26 F.3d 402, 405-06 (3d Cir. 1994); *Woodruff v. Williams*, 2016 WL 6124270, at *1 (E.D. Pa. Oct. 19, 2016).

If a petitioner's failure to exhaust, however, does not fall within the aforementioned "ineffective corrective process" exception, and state procedural rules bar the petitioner from seeking further relief in state courts, the claims, although technically exhausted, are procedurally defaulted. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is technically exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989). A federal court cannot consider the merits of procedurally defaulted claims unless the petitioner establishes

9

cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will result absent review of the claims.  *See Lines*, 208 F.3d at 160.

## III.   **DISCUSSION**

### A.   **Exhaustion**

All three Petitioners acknowledge that they did not exhaust state remedies for their habeas claims due to their failure to appeal the denial of their Rule 61 motions to the Delaware Supreme Court.  (D.I. 2 at 4).  They present three arguments as to why the Court should excuse their failure to exhaust under the "ineffective corrective process" exception to the exhaustion requirement, phrasing all three arguments in terms of "futility": (1) exhausting state remedies by appealing the Superior Court's Rule 61 decision would have been futile because of the Superior Court's inordinate delay in adjudicating their Rule 61 motion ("inordinate delay" excuse); (2) appealing the denial of their Rule 61 motions to the Delaware Supreme Court would have been futile because that court has rejected identical claims based upon the OCME misconduct in other cases for postconviction relief ("futility on the merits" excuse); and (3) appealing the denial of their Rule 61 motions to the Delaware Supreme Court would have been futile because Rule 61 does "not provide an adequate opportunity for [Petitioner]s to obtain relief" ("futility due to deficiency of Rule 61 proceedings" excuse) (D.I. 2 at 5-7).  The State contends that Petitioners' failure to exhaust should not be excused for any of these futility reasons and, because state criminal procedural rules preclude them from returning to the state courts for further review, the claims are now technically exhausted but procedurally defaulted.  (D.I. 13 at 8-13).

The judges in this District Court have already considered, and rejected, the first two "futility" arguments presented here by Petitioner in the 2018 *Boyer* decision, and rejected all three "futility" arguments in the subsequent forty-five habeas cases filed by the ODS that involved a

purposeful and knowing failure to exhaust state remedies for the same OCME misconduct/*Brady*

claims.  *See Brown v. DeMatteis,* 2020 WL 7027563, at *8-11 (D. Del. Nov. 30, 2020)

(consolidation of eleven cases); *Ringgold v. DeMatteis*, 2020 WL 5350268, at *8-10 (D. Del. Sept.

4, 2020) (consolidation of nine cases);  *Lewis v. DeMatteis*, 2020 WL 5258462, at *8-10 (D. Del.

Sept. 3, 2020) (consolidation of eight cases); *Turner v. DeMatteis,* 2020 WL 5077939, at *11-13

(D. Del. Aug. 27, 2020) (consolidation of seventeen cases).  Although the ODS appealed the denial

of Boyer's petition, the Third Circuit denied Boyer's request for a certificate of appealability,

stating:

> We have rejected the argument that futility on the merits of a claim
> in state court excuses a habeas petitioner's failure to exhaust that
> claim.  Appellant failed to satisfy the exhaustion requirement with
> respect to the sole claim raised in his § 2254 petition.

(D.I. 23 in *Boyer*, C.A. No. 17-834-LPS) (internal citations omitted).  Notably, the ODS did not

appeal the decisions in any of the forty-five petitions that were denied pursuant to *Boyer*.  Given

these circumstances, the Court rejects Petitioners' attempts to excuse their failure to exhaust state

remedies on the basis of "futility."

### B.    Procedural Default

Having determined that Petitioners' intentional failure to appeal the denial of their Rule 61

motions is not excusable, Petitioners' habeas claims remain unexhausted.  At this juncture, any

attempt by Petitioners to exhaust state remedies by presenting the claims in new Rule 61 motions

would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as

successive under Rule 61(i)(2).  *See* Del. Super. Ct. Crim R. 61(i)(1) (establishing a one year

deadline for filing Rule 61 motions); Del. Super. Ct. Crim. R. 61(i)(2) (barring second or

successive Rule 61 motion unless certain pleading requirements are satisfied).  Consequently, the

Court must treat the claims as technically exhausted but procedurally defaulted, which means that

the Court cannot review the merits of the claims absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.  *See Lines*, 208 F.3d at 160.

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier,* 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.  *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001).  A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray,* 477 U.S. at 496.  Actual innocence means factual innocence, not legal insufficiency.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998).  In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

To the extent Petitioners' three-pronged futility argument should also be viewed as an attempt to establish cause for their procedural default, the argument is unavailing.  In order to establish cause, Petitioners must demonstrate that an external factor prevented them from appealing the denial of their Rule 61 motion.  Nothing, however, prevented Petitioners from filing post-conviction appeals – they simply elected not to do so.  Thus, Petitioners' belief that it would

12

have been futile to present their claims to the Delaware Supreme does not constitute cause for their procedural default.

In the absence of cause, the Court does not need to address prejudice.  The Court further concludes that the miscarriage of justice exception does not excuse Petitioners' procedural default. Although the two Petitioners who pled guilty (Smith and Grier) contend that there is a reasonable probability that they would not have pled guilty had they known about the OCME misconduct, and also that they may have sought and received "a substantial reduction in the plea-bargained sentence as a condition of forgoing a trial" (D.I. 2 at 18), neither of these assertions constitutes new reliable evidence of their actual innocence.  Similarly, although Petitioner Williams – who was convicted after a stipulated bench trial – contends that it is "unrealistic to believe that an experienced attorney armed with this information would have chosen to stipulate to evidence supporting an essential element of an offense" (D.I. 2 at 14 in *Williams*, C.A. No. 17-1491-MN), this assertion does not constitute new reliable evidence of Williams' actual innocence. Accordingly, the Court will deny the instant Petitions as procedurally barred from federal habeas review.

## IV.     <u>EVIDENTIARY HEARING</u>

As an alternative request for relief, Petitioners summarily ask the Court to "hold an evidentiary hearing and allow full briefing on [their] claim[s]."  (D.I. 2 at 15).  It is unclear whether they request an evidentiary hearing on the underlying OCME misconduct/*Brady* claims or on the procedural default of those claims.

13

A.  **Evidentiary Hearing On OCME Misconduct/*Brady* Claims**

AEDPA permits evidentiary hearings on habeas review in a limited number of circumstances.[5]  *See Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).  For instance, 28 U.S.C. § 2254(e) provides:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
>> (A) the claim relies on –
>>
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>>
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

---

[5]  Prior to the enactment of AEDPA, "the decision to grant an evidentiary hearing was generally left to the sound discretion of district courts."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  Evidentiary hearings, however, were mandatory in six specific circumstances:  (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.  *Townsend v. Sain*, 372 U.S. 293, 312 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  Although AEDPA has not changed the "basic rule" of leaving the decision to grant an evidentiary to the discretion of the district courts, it has imposed certain limitations on the exercise of that discretion via § 2254(e)(2).  *See Cristin v. Brennan*, 281 F.3d 404, 413 (2002).

28 U.S.C. § 2254(e)(2).  The "initial inquiry" when determining whether to grant an evidentiary hearing is whether the petitioner has "failed to develop the factual basis" of the claim in state court.  *See* 28 U.S.C. 2254(e)(2); *Williams v. Taylor*, 529 U.S. 420, 433 (2000).  "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 433.  "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id*. at 437.  When determining if a petitioner has been diligent, "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." *Id*. at 435.  In short, if the factual basis of the claim was not developed but the petitioner was diligent in pursuing the claim in state court, the opening phrase of § 2254(e)(2) does not bar an evidentiary hearing.  *See Lark v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 596, 614 (3d Cir. 2011).

Nevertheless, "a petitioner who diligently but unsuccessfully seeks an evidentiary hearing in state court still is not **entitled** to an evidentiary hearing in federal court under AEDPA.  Rather, [. . .] whether to hold a hearing for a petitioner who is not at fault under § 2254(e)(2) remains in the discretion of the district court, and depends on whether the hearing would have the potential to advance the petitioner's claim." *Taylor v. Horn*, 504 F.3d 416, 444 (3d Cir. 2007) (emphasis in original); *see Schriro*, 550 U.S. at 473 (explaining that the "basic" pre-AEDPA rule leaving the decision on whether to grant an evidentiary hearing to the "sound discretion of district courts" has not changed under AEDPA).  "Where a petitioner fails to forecast to the district court evidence outside the record that would help his cause or 'otherwise to explain how his claim would be advanced by an evidentiary hearing,' a court is within its discretion to deny the claim." *Buda v. Stickman*, 149 F. App'x 86, 90 (3d Cir. 2005).

Here, although evidentiary hearings were not held in any of the three Petitioners' Rule 61 proceedings, Petitioners do not explain how the factual basis of their claims need further development as part of their federal habeas review.[6]  In fact, a Rule 61 evidentiary supplement filed in Williams' (C.A. No. 17-1491-MN) and Grier's (C.A. No. 17-1511-MN) cases indicates that they knowingly decided to forego a Rule 61 evidentiary hearing when they agreed with the Superior Court's assessment that an evidentiary hearing was not warranted in their Rule 61 proceedings because the issues were legal in nature.  (*See* D.I. 12-28 at 36, 35 in *Williams,* C.A. No. 17-1491-MN).  The Superior Court explained that, "factually the critical factor appears to be whether the defendant pled guilty or proceeded to trial," and it was "willing to rule on th[e] outstanding [Rule 61] Motions based upon the pleadings filed to date," subject to the parties' agreement.  (*Id*. at 8).  Although Smith's state court record does not contain the same Rule 61 evidentiary supplement filed in Grier and Williams' cases, the fact that the Superior Court denied Smith's Rule 61 motion after applying the rationale of *Miller* (D.I. 2-4 in *Smith,* C.A. No. 17-1423) (which is the same rationale applied to deny Grier's and Williams' Rule 61 motions) suggests that Smith also knowingly decided to forego an evidentiary hearing.

Given these circumstances, the Court is inclined to find that there was no failure to develop the factual basis of the claims at the state court level which, in turn, would eliminate the need for an evidentiary hearing here.  Nevertheless, exercising prudence, the Court will continue with its analysis.

---

[6]     At the risk of repetition, the Court emphasizes that all of the Rule 61 motions filed by the instant Petitioners presented the identical OCME misconduct impeachment evidence claim, as well as the related involuntary guilty plea argument in seven of the Rule 61 motions,  the Superior Court denied the three Rule 61 motions for substantially the same reason, namely, because Petitioners either stipulated to the drug evidence (Williams) or knowingly and voluntarily admitted during their plea colloquy that they committed the drug crimes (Smith and Grier).

Although Williams and Grier agreed to forego an evidentiary hearing, it appears that they technically satisfied § 2254(e)(2)'s diligence requirement because, at a minimum, the Superior Court's letter indicates that they originally sought an evidentiary hearing in the manner prescribed by state law. The Court reaches the same conclusion with respect to Smith (who may or may not have implicitly agreed to forego an evidentiary hearing). Because it appears that Petitioners exercised the type of diligence contemplated by § 2254(e)(2), § 2254(e) does not bar an evidentiary hearing,[7] which means that the Court retains discretion over the decision to conduct an evidentiary hearing.

Even so, Petitioners have not met their burden of showing that an evidentiary hearing would be meaningful in relation to the OCME misconduct/*Brady* claims. Their single-sentence request for a hearing does not forecast any evidence beyond that existing in the record that would help their cause, nor does it explain how a new hearing would advance their claims. Indeed, none of the three Petitioners filed replies to the State's argument that an evidentiary hearing is not warranted. Moreover, given either their stipulation regarding the drug evidence during a stipulated bench trial (Williams) or admission of guilt during their guilty plea colloquy and their failure to assert their actual innocence (Smith and Williams), Petitioners have not alleged facts that, if true, would permit them to prevail on their OCME misconduct/*Brady* claims. Accordingly, the Court concludes that an evidentiary hearing on the OCME misconduct/*Brady* claims is not warranted in any of the instant cases.

---

[7]     Alternatively, even if the Court were to conclude that Petitioners did not satisfy the diligence requirement of § 2254(e)(2), then the Court would only be permitted (but not required) to hold an evidentiary hearing if Petitioners demonstrated that their cases fell within the very limited circumstances set forth in § 2254(e)(2)(A) and (B). Because Petitioners' single-sentence request for an evidentiary hearing does not come close to satisfying the requirements of § 2254(e)(2)(A) or (B), in this alternate scenario, § 2254(e)(2) would bar the Court from holding a hearing in all three cases.

**B.      Evidentiary Hearing on Procedural Default**

The Third Circuit has held that § 2254(e)(2) does not bar an evidentiary hearing to determine if a petitioner can establish cause and prejudice to avoid a procedural default. *See Cristin*, 281 F.3d at 416-17 (holding that "the plain meaning of § 2254(e)(2)'s introductory language does not preclude federal hearings on excuses for procedural default at the state level."). Consequently, it is within the Court's discretion to hold an evidentiary hearing on Petitioners' excuses for their failure to appeal the denial of their Rule 61 motions.

As previously discussed,[8] the Court has considered, and rejected, Petitioners' reasons for the procedural default, and they do not indicate any other evidence/reason that may excuse their failure to appeal the denial of their Rule 61 motions.  Therefore, the Court will not hold an evidentiary hearing on the issue of procedural default.

**V.      CERTIFICATE OF APPEALABILITY**

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant three petitions do not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability in any of the instant three cases.

---

[8]      *See supra* at III. A and B.

## VI.     CONCLUSION

For the reasons discussed, the Court concludes that all three petitions must be denied.  An appropriate Order will be entered.